UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATS ELECTRONICS, LLC, a California Limited Liability Company,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>QUANFU DENG,<br><br>　　　　　Defendant. | No. 2:14-cv-1077 JAM AC (TEMP)<br><br>FINDINGS AND RECOMMENDATIONS |

Pursuant to Local Rule 302(c)(19), this matter came before the court on October 9, 2015, for hearing of plaintiff's motion for default judgment.[1] ECF No. 16. Attorney Brent Blakely appeared telephonically on behalf of the plaintiff. Defendant Quanfu Deng appeared in person on his own behalf. At that time oral argument was heard and the motion was taken under submission.

Upon review of the motion and the supporting documents, and good cause appearing, THE COURT FINDS AS FOLLOWS:

/////

/////

---

[1] On November 6, 2015, this matter was reassigned from the previously assigned Magistrate Judge to the undersigned. ECF No. 20.

1

FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2014, plaintiff Beats Electronic, LLC, ("Beats"), a producer of premium trademarked headphones, earphones, cables, speakers and other sound related accessories, filed a complaint against defendant Quanfu Deng alleging that the latter unlawfully sold counterfeit Beats' products on February 4, 2014, at the Galt Flee Market located at 610 Chabolla Avenue in Galt, California, in violation of 15 U.S.C. § 1114 (Federal Trademark Infringement), 15 U.S.C. § 1125 (False Designation of Origin and False Descriptions), California Business and Professions Code § 17200 *et seq.* (Unfair Competition), and common law Trademark Infringement and Unfair Competition.  ECF No. 1.  Plaintiff's complaint seeks statutory, punitive and treble damages, as well as injunctive relief, costs and attorney's fees.

The summons and complaint were served on the defendant by substituted service on May 10, 2014.  ECF No. 5; FED. R. CIV. P. 4(e)(2); Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction).  Defendant failed to file an answer and the clerk entered default against defendant on October 6, 2014.  ECF No. 11.

Request for entry of default and the instant motion for default judgment and supporting papers were served by mail on defendant.  ECF Nos. 10, 15-5.  Plaintiff seeks an entry of default judgment in the amount of $2,000,000 in statutory damages pursuant to 15 U.S.C. § 1117 (c)(2), injunctive relief, attorney's fees and costs.  ECF No. 15-4.  Although defendant did not file an opposition to the motion for entry of default judgment, defendant did appear before the previously assigned Magistrate Judge at the October 9, 2015 hearing of plaintiff's motion for default judgment.  At that hearing the defendant stated that he could not represent himself in this action and that he could not afford to hire an attorney.

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See FED. R. CIV. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

1  238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th

2  Cir. 1986)); see FED. R. CIV. P. 55(b) (governing the entry of default judgments).  Instead, the

3  decision to grant or deny an application for default judgment lies within the district court's sound

4  discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

5  determination, the court may consider the following factors:

6  > (1) the possibility of prejudice to the plaintiff; (2) the merits of
>  plaintiff's substantive claim; (3) the sufficiency of the complaint;
7  > (4) the sum of money at stake in the action; (5) the possibility of a
>  dispute concerning material facts; (6) whether the default was due
8  > to excusable neglect; and (7) the strong policy underlying the
>  Federal Rules of Civil Procedure favoring decisions on the merits.
9

10  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

11  disfavored.  Id. at 1472.

12      As a general rule, once default is entered, well-pleaded factual allegations in the operative

13  complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

14  v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

15  Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v.

16  Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint

17  are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings,

18  and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co.

19  of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388

20  (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A]

21  defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law")

22  (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal.

23  2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's

24  default conclusively establishes that party's liability, although it does not establish the amount of

25  damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th

26  Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure

27  37 that the default conclusively established the liability of the defaulting party).

28  /////

DISCUSSION

**A.     The <u>Eitel</u> Factors**

   **1.     Factor One: Possibility of Prejudice to Plaintiff**

The first <u>Eitel</u> factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at 1177.  Here, plaintiff would potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment, plaintiff would be without another recourse for recovery.  Accordingly, the first <u>Eitel</u> factor favors the entry of default judgment.

   **2.     Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries.  The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at 1175.  Plaintiff seeks entry of default judgment on its claims of violation of 15 U.S.C. § 1114 (Federal Trademark Infringement), 15 U.S.C. § 1125 (False Designation of Origin and False Descriptions), California Business and Professions Code § 17200 *et seq.* (Unfair Competition), and common law Trademark Infringement and Unfair Competition.

Although plaintiff has alleged four distinct claims, "the essential elements of the federal claims are identical and if met with adequate evidence are sufficient to establish liability under the state law claim as well." <u>Phillip Morris USA Inc. v. Shalabi</u>, 352 F.Supp.2d 1067, 1072 (C.D. Cal. 2004) (citing <u>Brookfield Communications, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999)).  In this regard, to state a claim for trademark infringement the complaint must allege that the plaintiff: "(1) …has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." <u>Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc.</u>, 448 F.3d 1118, 1124 (9th Cir. 2006); <u>see also</u> <u>Multi

Time Machine, Inc. v. Amazon.com, Inc., 804 F.3d 930, 935 (9th Cir. 2015) ("To prevail on a claim of trademark infringement under the Lanham Act, a trademark holder must show that the defendant's use of its trademark is likely to cause confusion, or to cause mistake, or to deceive.").

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). In evaluating the likelihood of confusion, the court normally employs an eight factor test. See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979) abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003). However, "[w]here . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987); see also M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1085 (9th Cir. 2005) ("When the alleged infringer knowingly adopts a mark similar to another's, we must presume that the public will be deceived."); Adobe Systems, Inc. v. Taveira, No. C 08-2436 PJH, 2009 WL 506861, at *2 (N.D. Cal. Feb. 27, 2009) ("Where a defendant knowingly adopts the plaintiff's mark with the intent to capitalize on plaintiff's reputation the courts may presume that the public will be deceived."); Shalabi, 352 F.Supp.2d at 1073 ("in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing").

Here, plaintiff's complaint alleges that Beats has held federally registered trademarks since 2006, that its trademarks are distinctive, exclusive, and have been endorsed by numerous musicians, athletes and celebrities, and that Beats products achieved sales of $850 million in 2012. Moreover, according to the allegations of the complaint, the defendant willfully used the Beats trademark to confuse consumers and aid in the promotion and sales of his counterfeit products. ECF No. 1 at 6-9.

Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the Eitel factors are concerned, the complaint and record before the undersigned

favor entry of default judgment.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks damages of $2,000,000 plus attorney's fees and costs. Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. See, e.g., Joe Hand Promotions v. Streshly, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); J & J Sports Productions. v. Cardoze, No. C 09-05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); see also Board of Trustees of the Sheet Metal Workers v. Vigil, No. C 07-01508 WHA, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); but see J & J Sports Productions v. Hernandez, No. 2:09-cv-3389 GEB KJN, 2010 WL 1980186, at *4 (E.D. Cal. May 17, 2010) ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment). As discussed below, however, the undersigned declines to recommend judgment in the amount requested. Consequently, this factor does not weigh against the entry of default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations.[2] Here, the Court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court

---

[2] Moreover, defendant appeared at the October 9, 2015 hearing and did not challenge plaintiff's allegations that the defendant sold the counterfeit product.

6

1   clerk enters default judgment, there is no likelihood that any genuine issue of material fact
2   exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at
3   1177.

**5.    Factor Six: Whether the Default Was Due to Excusable Neglect**

Upon review of the record before the Court, the undersigned finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff personally served the defendant with the summons and complaint. Moreover, plaintiff served defendant by mail with notice of its application for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant failed to defend himself in this action. Moreover, defendant appeared at the October 9, 2015 hearing and stated that he was incapable of putting forth a defense, either through counsel or on his own behalf. Thus, the record supports a conclusion that the defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

**6.    Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits**

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010); ACS Recovery Servs., Inc. v. Kaplan, No. C 09-01304 JSW, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010); Hartung v. J.D. Byrider, Inc., No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009). Accordingly, although the undersigned is cognizant of the policy favoring decisions on the merits-and consistent with existing policy would prefer that this case be resolved on the merits-that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendant and will make a recommendation to that effect.

1  What remains is the determination of the amount of damages to which plaintiff is entitled.

2  **B.    Terms of Judgment**

3  After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Plaintiff seeks $2,000,000 in statutory damages pursuant to 15 U.S.C. § 1117(c)(2), which provides that "[i]n a case involving the use of a counterfeit mark . . . . the plaintiff may elect . . . to recover, instead of actual damages and profits . . . if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."

According to the declaration of Kris Buckner, plaintiff's licensed private investigator, on February 4, 2014, plaintiff's investigators traveled to the Galt Flea Market, where they observed twenty units of Beats by Dre headphones at booths H63 and H64. ECF No. 15-3 at 2. Defendant Deng was the operator of those booths. The investigators made a test purchase and verified that the product was counterfeit. Defendant was served with a cease-and-desist notice and voluntarily surrendered 2,402 units of Beats by Dre products, believed to value $384,134.65, as well as hundreds of empty Beats packages.[3] Id. at 2-3. Plaintiff argues that, although it is entitled to recover damages for each infringed mark, "it has limited its request to the statutory maximum for a single mark." ECF No. 15-1 at 22.

"The district court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Los Angeles News Service v. Reuters Television Intern., Ltd., 149 F.3d 987, 996 (9th Cir. 1998); see also Peer Intern. Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) ("The court is guided by what is just in the particular case, considering the nature of the copyright, the circumstances of the

---

[3] "Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with 'an aura of indifference to plaintiff's rights'-in other words, that the defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it." Philip Morris USA Inc. v. Liu, 489 F.Supp.2d 1119, 1123 (C.D. Cal. 2007); see also Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501-02 (C.D. Cal. 2003) ("Where, as here, Defendant imports 8,000,000 counterfeit cigarettes, having a street value of millions of dollars, Defendant obviously knew that its conduct constituted infringement.").

8

infringement and the like.").

> When determining the appropriate amount of statutory damages to award under § 1117(c), some courts have considered the following factors that guide the award of statutory damages under an analogous provision of the Copyright Act: (1) the expenses saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Coach, Inc. v. Diva Shoes & Accessories, No. 10-5151 SC, 2011 WL 1483436, at *6 (N.D. Cal. Apr. 19, 2011) (citing Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1237-38 (E.D. Cal. 2008)).

Here, plaintiff's trademark is clearly quite valuable and the court infers from the allegations of the complaint that the defendant's conduct was willful. However, there is no evidence before the court addressing the revenues lost by the plaintiff. It also appears that the defendant cooperated in providing records from which to assess the value of the infringing material produced by voluntarily surrendering the counterfeit products in his possession.

Moreover, there is no evidence before the court establishing defendant's expenses saved or profits reaped. However, the declaration of Kris Buckner establishes that even if the defendant sold all 2,402 of the counterfeit units he voluntarily surrendered at the per unit value estimated by plaintiff, and at no cost to the defendant (an assumption which strains credulity), defendant's profits reaped would have been only $389,134.65, a fraction of the $2,000,000 in statutory damages sought by plaintiff.[4]

In this regard, the undersigned finds that a statutory award of $10,000 will have a considerable deterrent effect on others besides the defendant and serve to severely discourage the defendant from engaging in any future trademark infringement. See generally Coach, Inc. v. American Fashion Gift, No. CV 12-07647-MWF (RZx), 2013 WL 950938, at *2 (C.D. Cal. Mar. 12, 2013) (awarding $10,000 in statutory damages under similar circumstances); Sennheiser

---

[4] There is also no evidence before the court establishing that the defendant had repeatedly sold counterfeit products or engaged in the importing, manufacturing or distributing of counterfeit products.

9

1  Electronic Corp. v. Bielski, No. CV11-07892-ODW (FFMx), 2012 WL 2006011, at *3 (C.D. Cal.
2  June 4, 2012) (awarding $6,000 in statutory damages where defendant engaged in multiple sales
3  of plaintiff's trademarked headphones); Coach Services, Inc. v. Cheap Sunglasses, No. 09Cv1059
4  BEN (JMA), 2010 WL 2696799, at *2 (S.D. Cal. July 6, 2010) (awarding $6,000 in statutory
5  damages).
6      Accordingly, the undersigned will recommend that plaintiff be awarded $10,000 in
7  statutory damages.
8      Plaintiff's motion for default judgment also includes a request for a permanent injunction
9  enjoining defendant from offering for sale or selling counterfeit Beats products.  15 U.S.C. §
10 1116(a) provides that a district court has the "power to grant injunctions, according to the
11 principles of equity and upon such terms as the court deems reasonable, to prevent the violation
12 of any right of the registrant of a mark registered in the Patent and Trademark Office."  A
13 permanent junction may be granted where the plaintiff demonstrates: "(1) that it has suffered an
14 irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate
15 to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff
16 and defendant, a remedy in equity is warranted; and (4) that the public interest would not be
17 disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391
18 (2006).
19     "Injunctive relief is the remedy of choice for trademark and unfair competition cases,
20 since there is no adequate remedy at law for the injury caused by a defendant's continuing
21 infringement."  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988).
22 Moreover, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that
23 the plaintiff will suffer irreparable harm if injunctive relief is not granted."  Vision Sports, Inc. v.
24 Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989).  And "the public has an interest in the
25 enforcement of federal statutes."  CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008).
26     In light of the fact that there is no hardship to the defendant in enjoining defendant from
27 selling counterfeit products, the undersigned will recommend that plaintiff be awarded a
28 permanent injunction.

1       Finally, plaintiff's motion for default judgment also seeks an award of attorney's fees and

2 costs.  "An award of reasonable attorneys' fees and costs is expressly provided for in 'exceptional

3 cases' of trademark infringement."  Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702

4 (9th Cir. 2008) (quoting 15 U.S.C. § 1117(a)).  The term "exceptional cases" is generally

5 accepted to mean cases in which trademark infringement is "deliberate and willful."  See Lindy

6 Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993) (interpreting the term

7 "exceptional" to apply when "the infringement is malicious, fraudulent, deliberate, or willful.").

8 An entitlement to reasonable attorney's fees may be found where the complaint alleges that the

9 defendant's conduct was willful and the defendant's default has been entered.  See Derek, 528

10 F.3d at 702 ("Thus, all factual allegations in the complaint are deemed true, including the

11 allegation of Poof's willful infringement of Andrew's trademarks.  This default sufficiently

12 establishes Andrew's entitlement to attorneys' fees under the Lanham Act.").

13       As noted above, however, the award of attorney's fees must be reasonable.  See Intel

14 Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 622 (9th Cir. 1993) ("the district court must first

15 determine the presumptive lodestar figure by multiplying the number of hours reasonably

16 expended on the litigation by the reasonable hourly rate").  In this regard, Local Rule 293 requires

17 a party seeking an award of attorney's fees to submit an affidavit addressing certain criteria that

18 the court will consider in determining whether an award of attorney's fees is appropriate.

19       Here, although plaintiff has submitted a declaration in support of its request for attorney's

20 fees, the declaration does not address all of the criteria listed in Local Rule 293.  Plaintiff has also

21 failed to submit a bill of cost conforming to 28 U.S.C. § 1924 and Local Rule 292.  Accordingly,

22 the undersigned will recommend that plaintiff's request for attorney's fees and costs be denied

23 without prejudice to renewal.

24       Accordingly, IT IS HEREBY RECOMMENDED that:

25       1. Plaintiff's August 21, 2015 motion for default judgment, (ECF No. 13), re-

26 noticed for hearing on August 21, 2015, (ECF No. 15), be granted in part;

27 /////

28 ////

    2. The court enter judgment against the defendant on the complaint's claims of violation of 15 U.S.C. § 1114, 15 U.S.C. § 1125, California Business and Professions Code § 17200 *et seq.*, and common law Trademark Infringement and Unfair Competition;

    3. The court award statutory damages pursuant to 15 U.S.C. §1117 in the amount of $10,000 to plaintiff;

    4. The court enjoin defendant, and all persons acting by, through, or in concert with the defendant, from using plaintiff's trademarks in any manner;

    5. The court deny plaintiff's request for attorney's fees and cost without prejudice to renewal; and

    6. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: January 28, 2016

                                                 */s/ Allison Claire*
                                                 ALLISON CLAIRE
                                                 UNITED STATES MAGISTRATE JUDGE